UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff/Respondent,          Crim. No. 09-cr-20200
                                          Civ.  No.  12-cv-13123
vs.                                     Hon. Gerald E. Rosen

TOE MYINT,

                    Defendant/Petitioner.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION UNDER
28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on September 29, 2015

PRESENT:   Honorable Gerald E. Rosen
                    United States District Chief Judge

## I.  INTRODUCTION

This matter is presently before the Court on Defendant Toe Myint's § 2255 Motion to Vacate, Set Aside or Correct Sentence.  The Government has responded to Defendant's Motion.  Having reviewed and considered Defendant's Motion and supporting brief, and the Government's response thereto, and having reviewed the entire record of this matter, the Court finds that a hearing is unnecessary.  Therefore, in accordance with Rule 8 of the Rules Governing Section 2255 Proceedings and Local Rule 7.1(f)(1), Defendant's motion will be decided on the briefs.

1

## II. PERTINENT FACTS

Defendant Toe Myint was indicted along with several others on charges of health care fraud and conspiracy to commit health care fraud. At the time, Myint was a licensed physician working at the Sacred Hope Center, a medical clinic in Southfield, Michigan. The indictment alleged that Myint submitted false and fraudulent claims to Medicare for the payment of medically unnecessary injection and infusion treatments and other services provided to Sacred Hope clinic patients.

Myint was tried before a jury in January 2010. After a three-day trial, Myint was convicted on one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.[1] On April 26, 2010, Myint was sentenced by this Court to 72 months' imprisonment to be followed by two years' supervised release, and ordered to pay $3,142.193.77 in restitution.

Myint thereafter appealed his conviction to the Sixth Circuit Court of Appeals challenging (1) the sufficiency of evidence of him having knowingly participated in or voluntarily joined the conspiracy and (2) the Court's "deliberate ignorance" instruction. Myint also claimed ineffective assistance of counsel. On January 9, 2012, the Sixth Circuit affirmed Myint's conviction but dismissed, without prejudice, his ineffective assistance of counsel claim.

---

[1] The jury found Myint not guilty on three substantive counts of health care fraud that related to Myint's prescription of specific quantities of medications to three specific individuals.

Following issuance of the appellate court's mandate, on July 13, 2012, Myint filed the instant § 2255 Motion.  As grounds for relief, Myint asserts the ineffective assistance of counsel claims that the Sixth Circuit had previously dismissed, without prejudice.  He further asserts claims of violation of his Fifth Amendment privilege against self-incrimination and denial of his right to a fair trial.

DISCUSSION

A.   DUE TO DEFENDANT MYINT'S FAILURE TO RAISE CLAIMS THAT COULD HAVE BEEN, BUT WERE NOT, RAISED ON DIRECT APPEAL, HE IS BARRED FROM RAISING THEM IN HIS § 2255 MOTION

Myint's claim of denial of Fifth Amendment rights arises out of an interview conducted by the FBI on August 7, 2007, i.e., some two and a half years before trial, and his agreeing to his attorney's submission of a Stipulation of certain facts at trial.  His denial of fair trial claim centers around the trial testimony of three of Myint's co-conspirators:  he claims the Court unfairly (1) allowed one co-conspirator testify in a manner that made her seem as if she were an expert; and (2) allowed two other co-conspirators to testify "with the promise of leniency or dismissal of indicted charges" but did not allow him to present evidence of his co-conspirators' reduced sentence "rewards" for testifying against him.  He also claims that the Government infringed on his right to a fair trial by withholding "a vital piece of evidence." Myint did not raise any of these claims in his direct appeal.

A § 2255 proceeding is not a substitute for a direct appeal.  *See United States v.*

*Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 2240  (1979).  Accordingly, claims not

raised on direct appeal generally may not be raised on collateral review.  *See Massaro v.*

*United States*, 538 U.S. 500, 503123 S.Ct. 1690, 1693 (2003).  If any issue could have

been raised on direct appeal, the failure to raise it therein constitutes a procedural default

and precludes review in a § 2255 proceeding unless the petitioner can demonstrate both

"cause" for the procedural default <u>and</u> actual "prejudice," or that he is "actually

innocent."' *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604 (1998); *Murray*

*v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643-2644 (1986);*United States v. Frady*,

456 U.S. 152, 167-68, 102 S.Ct. 1584, 1594 (1982).  The hurdle a 2255 movant faces in

excusing his procedural default is "intentionally high. . . , for respect for the finality of

judgments demands that collateral attack generally not be allowed to do service for an

appeal." *Peveler v. United States*, 269 F.3d 693, 699-700 (6th Cir. 2001) (quoting *Elzy v.*

*United States*, 205 F.3d 882, 884 (6th Cir.2000)).

     The "cause and prejudice" standard requires the prisoner to show not only that

"some objective factor external to the defense" impeded his efforts to raise the issue

earlier, *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566 (1991) (citing

*Murray v. Carrier, supra*, 477 U.S. at 488, 106 S.Ct. at 2645), but also that the error he

alleges "worked to his *actual* and substantial disadvantage, infecting his entire trial with

error."  *Frady, supra*, 456 U.S. at 170, 102 S.Ct. 1596 (emphasis in original).

     Defendant Myint had an opportunity to present his claims of violation of his Fifth

Amendment and fair trial rights in his appeal before the Sixth Circuit but he failed to do

so.  Moreover, he has failed to show any "objective factor external to the defense" that prevented him from doing so, nor has he shown that the errors of which he complains were so egregious as to have "infected his entire trial with error," or that he is "actually innocent" of the crime of conviction.  Having failed to demonstrate the requisite "cause and prejudice" for his failure to raise his Fifth and Sixth Amendment claims in his direct appeal, Defendant Myint is barred from raising those claims now.

B.    DEFENDANT HAS FAILED TO DEMONSTRATE THAT HE WAS
       AFFORDED INEFFECTIVE ASSISTANCE OF COUNSEL

Noting that "[g]enerally, ineffective assistance of counsel claims are not reviewed on direct appeal. . . 'except in rare circumstances where the error is apparent from the existing record,'" the Sixth Circuit dismissed Defendant Myint's ineffective assistance of counsel claims, without prejudice, allowing him to raise those claims in this 2255 proceeding.  *See United States v. Myint*, 455 F. App'x 596, 606 (6th Cir. 2012).  The requirements for demonstrating ineffective assistance of counsel were established by the United States Supreme Court in *Strickland v. Washington*, 406 U.S. 668, 104 S.Ct. 2052 (1984).  To establish ineffective assistance of counsel, it must be shown (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. 406 U.S. at 687, 104 S.Ct. at 2064.

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id*. at 690.  The proper standard for assessing an attorney's

5

performance is that of "reasonably effective assistance." *Id.* A reviewing court's scrutiny of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997), *cert. denied*, 523 U.S. 1088 (1998). The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir.1999).

As indicated, the *Strickland* court further directed that judicial scrutiny of counsel's performance must be highly deferential. *Id.*, 406 U.S. at 689, 105 S.Ct. at 2065. The court explained the need for deference:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* (Citations omitted).

In this case, Myint claims his counsel was ineffective in six ways: (1) for agreeing to a stipulation of facts that incriminated Myint; (2) for not objecting to certain

6

government witness testimony; (3) for not moving for acquittal under Fed. R. Crim. P. 29; (4) for not timely moving for a new trial under Rule 33; (4) for allowing the Court to give a deliberate ignorance instruction without objection or modification; and (6) for advising Myint not to testify at trial.

    1.  The Stipulation of Facts

Myint claims that his counsel was ineffective because he persuaded Myint "to sign a document which indirectly admitted the basic accusations of the government, namely the Stipulation of Facts which stated that the medicines prescribed were not medically necessary." [Defendant's Brief, p. 21.]  However, Myint has failed to demonstrate that the stipulation was not part of a legitimate trial strategy.  *See Davis v. Lafler*, 658 F.3d 525, 538 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 1927 (2012) (noting that defense counsel's "strategic decisions" are given a "high level of deference" under the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (quoting *Strickland*, 466 U.S. at 689.)).

Here, stipulating that the medications prescribed were not medically necessary eliminated the need for expert testimony.  If Myint had contested the medical necessity of the medications, the Government would have put on an expert witness to testify at trial. *See* Discovery Notice, Dkt. # 53 at 2 (proposing an expert on internal medicine).  Such testimony would have highlighted for the jury the fact that Myint frequently prescribed medications with no possible medical value for Sacred Hope patients.  It is understandable that Myint's attorney would not want this point emphasized for the jury.

"'[A] seemingly unusual or misguided action by counsel [may have] had a sound strategic motive or [may have been] taken because the counsel's alternatives were even worse.'" *Myint*, 455 F. App'x at 606 (quoting *Massaro v. United States*, 538 U.S. 500, 505, 123 S.Ct. 1690 (2003)). The stipulation which Myint signed here, was a legitimate, strategic means to avoid highlighting for the jury the fact that Myint frequently prescribed medications for Sacred Hope clinic patients that with no possible medical benefit, and thus, did not constitute ineffective assistance of counsel.

2. Not Objecting to Government Witness Testimony

Myint claims his counsel was ineffective for not "object[ing] to the Government's witnesses when they delved into subject matter which they were not specialized [in] or of which they were not certified as experts." [Defendant's Motion, p. 25]. Although Myint's claim appears to be directed at more than one witness, in his brief he only identifies one of his co-conspirators, Lill Vargas-Arias, as having been allowed to testify inappropriately "as if [she] were an expert witness." Myint appears to take issue with what he describes as Vargas-Arias's "testimony about the medical necessity of the treatments" Myint provided Sacred Hope patients.

However, Myint's contention that Vargas-Arias provided inappropriate medical expert testimony is not borne out by the record. Rather, she testified at trial about the fraudulent scheme carried out by Myint and his co-conspirators:

Q:     With respect to the patient's health, did it matter whether the patients
       received these drugs or not?

8

A:      No.

Q:      Why's that?

A:      Because the idea was to defraud Medicare. I mean, they just did it.
        That was it.

[2/20/10 Tr., pp. 334-35].

Indeed, she made clear when testifying that she had no medical training and, thus,

could not be mistaken for any type of medical expert:

Q:      That was your understanding [of what Carimune is used for]?

A:      Yes.

Q:      Are you a doctor?

A:      No.

Q:      What was your understanding based on?

A:      Just research I did.

Q:      Internet research?

A:      Yes.

***

Q:      [A]t that point in time about two weeks after the clinic opened, had
        you told the defendant anything about what your medical training
        was?

A:      I didn't have no medical training.  [Myint] knew I was an
        administrator always.

*Id.* at 358, 362.

9

Contrary to Defendant's assertion, there is nothing in Vargas-Arias's trial testimony that suggests that she was anything more than a lay witness. She did not give any expert opinion or testify beyond her personal knowledge. Therefore, Myint has failed to show his counsel's decision not to object to her testimony was outside the range of reasonable professional judgment. *Strickland*, 466 U.S. at 688.

    3. <u>Failing to Move for Acquittal under Fed. R. Crim. P. 29</u>

Myint claims his counsel was ineffective for failing to move for acquittal under Rule 29. After the government closes its evidence, a defendant may move for a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). However, an attorney is not ineffective for failing to make a motion that had no reasonable probability of success. *See United States v. Corral*, 562 F. App'x 399, 404 (6th Cir. 2014). "Failure to make a meritless [motion] fails both prongs of the *Strickland* test." *Id.*

In this case, after the Government rested, at sidebar, the Court brought to Defendant's counsel's attention that he had not made a Rule 29 motion. *See* 1/21/10 Tr. at 587. Counsel responded that such a motion would have been "frivolous." *Id.* The Court agreed: "And I would tell you I would have denied it . . . . I think there's -- I appreciate that you probably understand that although there may be no direct evidence, there's plenty of circumstantial [evidence] from which the jury could infer." *Id.* at 587-88. Moreover, the Sixth Circuit also was in agreement that the Government presented

10

sufficient evidence at trial to sustain Myint's conviction. *See Myint*, 455 F. App'x at 601-02. As a consequence, a Rule 29 motion for judgment of acquittal would not have had any chance of success. A failure to make a motion for judgment of acquittal that had no chance of success cannot constitute ineffective assistance of counsel. *United States v. Carter*, 355 F.3d 920, 924-25 (6th Cir. 2004).

    4. <u>Failure to Timely Move for a New Trial Under Fed. R. Crim. P. 33</u>

Myint next claims that his counsel was ineffective for not filing a motion for new trial under Rule 33 within the time limit for doing so. However, Myint does not state what claims he believes his counsel could have made in a Rule 33 motion. However, assuming *arguendo* Defendant relies on the claims made in the new trial motion that was untimely filed, even if that motion were timely filed, it had no chance of success. The claims made by Defendant in his untimely-filed Motion for New Trial [Dkt. # 235] are the same claims he made on appeal and/or in this motion, i.e., that it was error for the Court to give a deliberate ignorance instruction and that his trial counsel was ineffective for stipulating that the medicines were not medically necessary, for not objecting to Lill Vargas-Arias's testimony, and for not calling Myint as a witness (discussed *infra*). As shown by the decision of the Sixth Circuit Court of Appeals and by this Opinion, those claims have no merit. Therefore, he cannot show that he was prejudiced by his counsel's untimely action.

    5. <u>Failure to Object to the Deliberate Ignorance Instruction</u>

Myint also conclusorily argues that his counsel was ineffective for allowing the deliberate ignorance instruction "without any objection or any modifications which could have at least ensured that the jury deliberations wouldn't be prejudiced in favor of the government's position." [Defendant's Motion at p. 2.]  This wholly conclusory argument provides no basis for this Court to find that Myint has met his burden of establishing that his counsel's performance was deficient.

Moreover, even assuming that his counsel's position was deficient, Myint has not demonstrated how, had his counsel objected to this instruction, the "result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.  Myint has not established that any objection -- or even if the instruction would not have been given -- would have changed the jury's verdict.  As such, Myint has failed to establish prejudice as required under *Strickland.*

6.  <u>Persuading Myint Not to Testify</u>

Myint's final claim of the ineffectiveness of his counsel is that his attorney advised him not to testify without a full discussion and "without much time to deliberate and consider the ramifications of my not going before the court and rebutting what was presented." [Defendant's Brief, p. 21.]  The record does not support Myint's current stance.  To the contrary, the record demonstrates that Myint knowingly and voluntarily waived his right to testify after having discussed with his lawyer, and after having considered, the ramifications of not testifying.  On the record, and under oath, Myint

stated:

> MR. MCCARTHY: State your full name for the record.

> THE DEFENDANT: Toe Myint, spelled t, as in Tom, y-i-n-t.

> MR. MCCARTHY: You're a medical doctor and defendant in this case. Correct?

> THE DEFENDANT: That's true, sir.

> MR. MCCARTHY: Now you understand that you have a right to testify in this trial or not testify. Correct?

> THE DEFENDANT: That's correct.

> MR. MCCARTHY: You heard Judge Rosen give those instructions to the jury at the beginning of the trial. Correct?

> THE DEFENDANT: That's correct, sir.

> MR. MCCARTHY: **You and I have discussed your right to testify or remain silent on a number of occasions while this case has been pending.**

> THE DEFENDANT: **That's true, sir.**

> MR. MCCARTHY: **Do you have a full understanding of your right to silence or to testify?**

> THE DEFENDANT: **I do understand, sir.**

> MR. MCCARTHY: This morning, you've told me that you have made a decision about whether to exercise your right to testify or to remain silent. Correct?

> THE DEFENDANT: That's correct, sir.

> MR. MCCARTHY: What is your decision, doctor?

THE DEFENDANT: I will remain silent.

MR. MCCARTHY: You're not going to testify. All right. **Are you satisfied that you've been advised adequately about the ramifications of either of those two choices?**

THE DEFENDANT: **Very well, sir.**

MR. MCCARTHY: And is there anything that you don't understand about your right to remain silent or to testify?

THE DEFENDANT: I understand, sir.

MR. MCCARTHY: Speak up, please.

THE DEFENDANT: I do understand, sir.

MR. MCCARTHY: You don't have any questions?

THE DEFENDANT: No questions, sir.

MR. MCCARTHY: **Is this a free and a voluntary decision that you're making this morning?**

THE DEFENDANT: **It's free. On my own.**

MR. MCCARTHY: All right.  And did you have any questions for anybody, Judge Rosen or myself this morning before we go forward?

THE DEFENDANT: No questions.

MR. MCCARTHY: Is this your ultimate decision to remain silent?

THE DEFENDANT: My own, yeah.

MR. MCCARTHY: You don't want to testify; is that correct?

THE DEFENDANT: That's correct.

14

MR. MCCARTHY: Thank you. No further questions.

THE COURT: Thank you, Dr. Myint. You understand that I will -- since you are not going testify, I will instruct the jury as I've already done, that they cannot hold that against you. In other words, they cannot use your silence against you in either deliberating upon or arriving at a verdict.

THE DEFENDANT: I understand.

THE COURT: You understand that if you wanted to testify, on the other hand, you would have the absolute right to be sworn under oath and to get up on the stand and to tell the jury your side of the story. Correct?

THE DEFENDANT: That's correct, sir.

THE COURT: **You feel like you've had an opportunity to fully discuss this with Mr. McCarthy?**

THE DEFENDANT: **I did discuss with him.**

THE COURT: **And you've arrived at this decision as Mr. McCarthy has indicated in his questioning of you, after full consultation with Mr. McCarthy and an understanding that you would have the right to testify if you wished to do so?**

THE DEFENDANT: **That's correct, sir.**

THE COURT: **You have voluntarily decided not to testify. Correct?**

THE DEFENDANT: **Not to testify, sir.**

THE COURT: Okay.

[1/21/10 Tr., pp. 583-87 (emphasis added)].

Despite what he stated under on the record and under oath, Myint now states that

15

he "wanted to testify" and that he "believed it was necessary" to refute trial testimony against him.  He also contends that he told his counsel he wanted to testify about a meeting he had with the FBI but that his counsel instructed him not to, so as not to put himself in "deeper trouble."  Yet, at no time during trial did Myint suggest to the Court that he wanted to testify or that his decision to remain silent was involuntary.  In this instance, Myint's "assent is presumed as is the effectiveness of [his] counsel." *Gonzalez v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000), *cert denied*, 532 U.S. 980 (2001) (holding that, where counsel makes a tactical decision to advise a defendant not to testify, "Petitioner's assent is presumed as is the effectiveness of Petitioner's counsel, barring any indication by Petitioner at trial that he disagreed with counsel").  As such, Myint has failed to meet his "heavy burden" of proving his counsel's assistance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Moreover, as the Court recognized at sentencing, Myint's explanation of his role at Sacred Hope clinic was "simply not credible," and that if he had testified in his own defense, he "would have gotten convicted on every count." *See* 4/26/10 Sentencing Hearing Tr. p. 48.  The decision not to testify, therefore, could not have prejudiced him.

In sum, the Court finds no merit in Defendant's claims of ineffective assistance of counsel.  Accordingly, Defendant's § 2255 Motion will be DENIED.

The Court will also deny a certificate of appealability.  Before a Section 2255 movant may appeal an adverse decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  In order to obtain a certificate of

16

appealability, a prisoner must make a substantial showing of the denial of a constitutional

right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to

show that reasonable jurists could debate whether, or agree that, the matter should have

been resolved in a different manner, or that the issues presented were adequate to deserve

encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the

petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district

court must issue or deny a certificate of appealability when it enters a final order adverse

to the applicant."  Rules Governing § 2255 Cases, Rule 11(a), 28 U.S.C. foll. § 2255.

For the reasons stated in this Opinion, the Court will deny Defendant Myint a

certificate of appealability because he has failed to make a substantial showing of the

denial of a federal constitutional right.  The Court also will deny leave to appeal *in forma*

*pauperis*  as an appeal cannot be taken in good faith.  Fed. R. App. P. 24(a).

CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant Myint's § 2255 Motion to

Vacate his Sentence **[Dkt. No. 322]** is DENIED.  Accordingly,

IT IS FURTHER ORDERED that Civil Action No. 12-cv-13123 is DISMISSED,

with prejudice.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED.

Leave to appeal *in forma pauperis* also is DENIED.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated:  September 29, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 29, 2015, by electronic and/or ordinary mail.

s/Julie Owens_____
Case Manager, (313) 234-5135

18